Good morning, Your Honors. May it please the Court, Judge Roebner. This is an insurance coverage case involving an underlying claim for defects in the construction of a high-rise condominium building. There have been many such cases in Illinois decided by both this and state courts in recent years, and a bright line rule has developed, which as enunciated by this court several times and by the state courts as well, the rule is settled that damage to the building or the structure itself is not covered as property damage caused by an occurrence, as those terms are used in a standard commercial general liability policy like the district court. I'm going to stop you, I'm going to stop you because I have a question that's been bothering me. Sure. On page 16 of the red brief, okay, the dependents point out that your quotation from the Bozzi case leaves out a key phrase that changes the meaning of the quote. Right. In your reply brief, you quoted it again, and again you left out that phrase. I would appreciate you with their interpretation of Bozzi, and why would you leave that out? Their interpretation of Bozzi, Bozzi is an unusual case in this line of authority because it involves work on a pre-existing structure. Most of these cases, including this case, involve all new construction. So there's no question in such a case that the entire building is not the work of the painter, which obviously we concede, and the only point that they're trying to make here is that the entire building is not the work of the painter, which obviously we concede. But there are many cases, including this court's decision in Lagoste-Mulder v. Consolidated, where that is in fact the case where the named insured is a contractor, in that case was a window contractor, not responsible for the entire building. And the deficiency in their work caused damage to some other part of the building, and yet the claim, the additional insured contractors, general contractors claim, it was not covered under the policy simply because it's an economic loss, the loss of the benefit of the bargain. Now what they want to do is to take the paint and the steel and the glass and the wood and everything and split it all apart and make these all separate products, which damaged one another and which caused third party property damage. But it's long been clear in the tort context where the Illinois Supreme Court has defined what we mean by economic loss that we look at, we determine whether a product is an integrated product or is instead several products based on the end user's perspective. So in this case, that would be the condominium association representing the condominium owners. They didn't buy a barrel of paint from National Decorating and some masonry from McHugh. They bought a completed product. So there are several cases that have held, including this court's decision five years ago in Lagoste, Mulder, which held that that's the way you look at it. You look at it from the end user's perspective, and in a construction defect case, there's just one product. There's the completed building. So Bozzi was a different case. Bozzi was a case where there was a pre-existing garage. It had been there for years probably. And then the owner hired the contractor to come out and put a second story on it. And in the course of so doing, too much of a load was placed on the pre-existing building, and it caused some of the structural members to fail or to need to be repaired. And so this court held way back in 1987 that you draw the line between new construction and the pre-existing building. In fact, the court even said if this were a case involving new construction, that this reasoning wouldn't apply. Well, it says in the first paragraph of the underlying complaint that this is a new construction project. So there shouldn't be any reliance on Bozzi. I think we all agree that Bozzi draws the line right where it should be, and that when you've got a case of new construction. I'm really sorry. I still don't understand why you would have left out that phrase. Well. I just don't. Well, in the line that they're quoting, they have ellipses as well, and they've taken some words out as well on page 16. That's 1, 2, 3, 4, 5th line. I don't know what's missing from there, but I assume it's not important to their argument. We took that phrase out because there's no dispute here that the building is the product of McHugh and the developers, 200 North and so on. The only question there is whether it can be considered the product of National Decorating as well. We don't maintain that their work was any broader than the painting itself, but there is no claim by a condominium association against the painter for a bad paint job. Okay, this is a claim for breach of the implied warranty of habitability because the building as a whole doesn't keep the water out. Now, why did you offer to pay claims for personal property damage of the unit owners and now claim you have no responsibility to do so? Because I myself have never known of an insurance company to incur damage that isn't within the scope of a policy. Well, of course, that happens all the time that insurance companies pay claims to avoid having to litigate or defend them, so that's very common. But the reason that we did it in this case is because they added these allegations of damage to furniture and other personal property in the Third Amendment complaint at the last minute, but they didn't add the plaintiffs, the unit owners, as plaintiffs. So if they were going to bring these plaintiffs in or they were going to bring these unit owners in as plaintiffs, that would change the dynamic. So we were proactive and we settled those claims pre-suit. So they're outside of this case. They were never a part of this case, and now they never will be a part of the case because we've settled them, as we have every right to do directly with the claimants. You know, you said that it's well settled that coverage for an additional insured is not broader than, but in fact narrower, than coverage for the named insured. And in footnote 8 on page 44 of the response brief, the defendants point out that you provide no citation for that supposedly well settled proposition. We cite a number of cases, but we don't, they're hijacking our argument. We're not arguing that there's no duty to defend because the additional insured coverage is narrower. We're conceding that there are additional insureds. They're entitled, at least for purposes of the duty to defend, to the same coverage that's afforded in the coverage grant. We're just saying it's not any broader. We're saying it doesn't cover the building itself. It doesn't cover the economic loss to the unit owners and the association. What does cover that economic loss? Well, it could be covered by a performance bond. The Illinois Supreme Court and this court as well have drawn a sharp distinction between commercial liability policies and performance bonds. What's the difference? Well, the difference is the performance bond, as the name would imply, guarantees that the contractors perform the work. So if typically it's the case where a contractor doesn't show up, walks off the job or what have you, and then the surety who issues the performance bond has a right, which we don't have in our policies, but they have a right in the bond to go in and essentially take over the work, hire their own contractors and make sure that it gets done. So we don't have that kind of right. I mean, I dare say that if the painter were to ask us to quote them a premium to cover the risk that they simply wouldn't paint the building correctly, I dare say whatever premium we quoted them, they would probably prefer to just put another coat of paint on the building. I don't see why anyone would voluntarily ensure that risk when they can simply do the job right in the first place. So that's really the distinction. The general liability policy, I mean, mainly for bodily injuries on the workplace. The property damage coverage, I mean, it's got to be outside the building itself. So we're talking about somebody drops a wrench from a height, then it goes through a car's windshield or something. That's the kind of property damage that would be included. And it's very narrow, and it certainly is not a substitute for a performance bond. Your example of dropping something goes through someone's windshield and a screwed up paint job. Well, because they're asking us to simply make up for their faulty workmanship. And Illinois courts have been very clear that that's not – when we use the term property damage in a CGL policy, we're talking about property that's other than the basis of the bargain. We're talking about third-party property. And there's also the requirement that any covered claim be caused by an occurrence, which is defined as an accident. And a bad paint job isn't an accident. I mean, that's – So how do you protect yourself against a bad paint job? Put another coat of paint on. You make sure you do it right the first time. If you're the general contractor, you go out and you look at the paint job before you let the painter walk off and get paid. It's very simple. You don't buy an insurance policy unless the owner insists on a performance bond. And that's a different kind of risk. That's not covered in the policy. Why do you say – why would the owner never buy insurance? Maybe he's nervous about the painters. Well, the owner – sure. I'm saying the painter never would because then he's – if he's shifting all of the risk of failing to do the job correctly, then he's also shifting all of his profits, basically, to the insurance company. He's taken all of the risk out of the job. That's the only reason that he's got an opportunity to make a profit. So no contractor would voluntarily insure that risk when it's so easy to self-insure. You simply do the job right the first time, and particularly in this case. I mean, this isn't a case where they splashed paint on a window or something. They just, you know, put two coats instead of three or three instead of four or whatever it was. And then after the fact, there's this allegation that they didn't put enough paint on. So that's – there's a case directly on point, Indiana Insurance v. Hydra. There was a bad paint job, and the court said that's not an accident. And the court said what? That's not an accident. Thus, it doesn't meet the definition of an occurrence. Thus, it's simply not covered under the CGL policy. So is the notion that any deliberate activity is not – deliberate act is not insured? Well, it's more than that. There's an exclusion for expected and intended acts, as if there's some kind of malicious act. We're not saying that. We're just saying it's well established that the mere shoddy workmanship doesn't constitute an accident under Illinois law. And that has been consistent, and this court has been very consistent on that. And there is no reason to change the analysis with respect to the additional insureds. We've basically challenged them to point out where in this additional insured endorsement the coverage is broadened, and they refuse. They just say, well, it's the policy as a whole, as it may be something in the auto section would inform us. So there is no language. There is no prior authority. The district court in this case relied only on a prior district court decision from the Northern District of Illinois, which found this additional insured coverage included the building itself. There is literally no other authority for that proposition in Illinois or anywhere else, and such a dramatic expansion in the law ought to be done by the Illinois Supreme Court if it's done at all. I'd like to save the rest of my time for rebuttal, if I may. Okay. Thank you, Mr. Osborne. Mr. Wyne. Good morning, ma'am. Please, the court. My name is Kevin Cito. I represent National Decorating. Do you have me there, sir? Kevin Cito. Yes, I'm sorry. I just missed that name. Yeah, sorry. No problem. I represent National Decorating, the name insured under this policy. I'm going to be addressing the first issue in our brief, dealing with the Westfield duty to defend, because of damage outside the scope of my client's work. My colleague, Chris Keith. Would you agree that if McHugh was the name insured under the CGL policy, then Westfield would not have a duty to defend in a case to recover damages to the project itself? Well, Your Honor, in this instance. Please say yes or no, please. Well, I can only offer you a tentative yes, because for starters, as you know, my client is the name insured. Secondly, the Westfield policy doesn't insure McHugh except as an additional insured. So how can McHugh obtain more coverage as an additional insured than it could if it were the name insured? Well, there's a simple answer to that. The language that Westfield wrote on its additional insured endorsement is what covers that, and the language is extremely broad when it uses the phrase arising out of. May I continue? Sure. Okay. What I was about to say is my colleague, Chris Kano, will talk about the standing issue and the matter of the owner's personal property, and then he'll be followed by Gene Wine, who's going to be speaking about the occurrence issue in this matter. Well, I listened carefully to Mr. Osborne's comments here, and I think he's missed the point on several important points before this court. First of all, he completely ignores the Larson case of the Illinois Appellate Court that is directly on point and certainly one that the district court felt had quite a bit of gravitas as far as urging the result that the district court reached. For the counsel to suggest that my client would just put another coat of paint on this building is just so far off the beat in terms of how we would be paid for that, supposedly, and how we would deviate from the architect's specifications. And that leads me to my next point, and that is our suggestion here of a bright-line rule is the scope of work, and that is exactly why the Bozzi case reached the holding that it did. As we know, in Bozzi, the court realized that when the general contractor damaged the existing building, that existing building was outside of the general contractor's scope, and that is really what we're facing here. My client, of course, only has as its scope the matter about the paint, and in the record, Your Honor, it reflects the fact that, and this is found at document 1-7, page 21 of 51, that this project was a $37 million project of which painting was $540,000. Well, I did the math, and that's less than 1.5% of this painting as compared to the entire budget for the project, and yet their suggestion would be that I would be faced, for purposes of insurance coverage purposes and duty to defend, with having to own the entire project as though it were mine. And that simply just doesn't make any economic sense, in my opinion. So, going back, Your Honor, as well, and this goes to Judge Rovner's point about the quote on page 16 that we pointed out, what we find interesting is that in all of these many cases, and there are a many, many number of the Illinois appellate court, but the Illinois Supreme Court, in the Brochu case, made an interesting quote, which was quoted in turn by this court in Bozzi to the effect that damage to property other than the insured's own work or product arising from breach of warranty of workmanlike manner is expressly not excluded. Well, that's a double negative, but the point is damage to property other than the insured's own work. What we find interesting about that is that this court obviously is always interested in what the Illinois Supreme Court says about contract law. And when we come to that, just an inch or so down in the opinion in Bozzi, we find the very quote that Judge Rovner has pointed out was not, in fact, quoted correctly. The point I'm making is that the Illinois Supreme Court recognized a damage to property other than the insured's own work. This court rephrased, restated that, and that is the very quote that Westfield, in our judgment, cherry-picked or otherwise used a careful ellipsis to mold to their advantage. So with that in mind then, Your Honor, we see then that one other point, let me put it this way, one other point I'd like to make. Counsel for Westfield would argue that the age of the building is really the determinant. If it's an existing building, that's how they slough off the Bozzi holding and say that makes it so easy. But if we had the identical set of facts as here, where my client was hired to paint an existing building, this very building perhaps needs a new coat of paint, but were we to go out there and do that and did everything the same with the same spec, the same union painters, the same type of Modak coating, and the same thickness and so forth and so on, that situation could be covered because that is exactly what the Bozzi case teaches us. It is that it would be an existing building, and if the same damage of water infiltrating, damaging drywall, damaging the interior portions of this building, anything other than my own paint, well then that would be a covered loss. And we suggest that this court's holding in Bozzi of some 30 years ago now still stands quite strongly and answers the result here. One last point I'd like to make about the performance bond suggestion is, first of all, I see that as very much a duty to pay issue, not a duty to defend. Secondly, a performance bond by its very definition is only going to cover the paint, if you will, itself. It is the performance of the painting, but that is exactly why we have a different set of facts here. We have a set of facts that involves damage to other parts of the building. Damage to other parts of the building, you said? Yes, sir. You know, I don't know if you're the right one of the three of you to ask this question of, but, you know, you've tried to distinguish Westfield, the recent Illinois case, on the ground that the underlying plaintiffs in that suit did not actually seek to recover for damages for personal property of unit owners. But that's true here as well. The Condo Association mentions this damage, but where is there any indication that they are seeking to recover on behalf of the unit owners? Can you give me anything more than the boilerplate prayer for relief? Can you give me anything more? Mr. Cano will address that. The short answer, Your Honor, though, is that we're stuck with the complaint as the Plaintiff Condo Association framed it, and it is what it is. Well, I'm not sure I understand that, but Mr. Cano will help me. Okay. Thank you very much. Thank you, Mr. Sidon. Mr. Cano? Good morning. May it please the Court, Chris Cano on behalf of the defendant, Appali James McHugh Construction Company, the general contractor of the subject construction project, also a named defendant in the underlying litigation and also has been sued by the developer as well. I can address the question just posed of my co-counsel on the allegations in the third party or the third amended complaint. It's our position that they meet the threshold requirement for the duty to defend here in Illinois because there is allegations of third party personal property damage here, the unit owners. And in addition to those allegations that are both in the general allegations as well as the breach of implied warranty of habitability and breach of fiduciary duty accounts, you also have the testimony of the 30B6 witness, Lori Pierce, who is the property manager for this project. She also gave a deposition in this case and testified that, yes, in fact, the association is pursuing these damages on behalf of the unit owners. And these aren't isolated damages. She also testified that there's more than 20 percent of the units that have been impacted by the water infiltration allegedly caused by the defective paint job by National Decorating. And that's significant because you're dealing with a building here with 200 units. And if I could go back to a point, I think this was in response to your question, Justice Rogner, in Westfield's opening presentation about the unit owners and the settlement of those claims. We don't know, in fact, what the extent of those types of damages or those claims are, except we have the deposition testimony that says over 20 percent of the units have been impacted. So if we play out Westfield's position in that regard on unit owners' personal property damage, what they're inviting is a series of lawsuits to be filed by the unit owners separately to seek these damages. But I don't think that's supported by any of the case law or Section 9.1B of the Illinois Condominium Property Act, which authorizes the association to pursue these types of damages. You can think, in this scenario, if you had a unit owner whose unit was impacted by the water infiltration, they have damage to furniture, flooring, I don't know what the extent of those damages would be, but I would think very quickly that the cost of pursuing those damages on an individual basis from the defendants would exceed any potential recovery and, therefore, would counsel them not to pursue those claims. And that's why they are being pursued by the association in this instance. So, Justice Rogner, does that respond to your question? Thank you. Okay. And I think it's really interesting. Thanks for calling me Justice. I'm sorry? I'm just a judge. Okay. I always err on the side of respect. Thank you. Are there any other questions that I can address regarding the standing of the association to pursue these claims or what those claims are? And one key point is the district court never got to this issue because they found sufficient evidence of allegations of other property damage other than the scope of National Decorating's work. They're beyond the repair costs of the paint job. Other parts of the building, the common elements, the units themselves, and, in addition, the personal property of the unit owners themselves. And we would suggest that this would also give the court reason to affirm the district court's ruling. So, if there's no further questions on this point, I'll turn it over to my co-counsel, Jean Wine, and she can address the remaining issues. Okay. Thank you. Thank you. Good morning, Your Honors. My name is Jean Wine, and I represent two of the additional insureds, 200 North Jefferson LLC and MCZ slash Jameson Development Group LLC. Your Honors, the allegations in the underlying litigation give rise to an occurrence under the CGL policies at issue here. Westfield acknowledges in its reply brief at the top of page three that the underlying litigation alleges that the faulty construction work by National Decorating caused water to infiltrate the subject condominium building. That water infiltration subsequently caused damage to portions of the building outside the scope of National Decorating's work, and as Mr. Cano just described, it also caused damage to personal property owned by the individuals who live in that building. It is that water infiltration that is the occurrence in this case, and numerous Illinois cases have found that water infiltration under these circumstances constitutes an occurrence for purposes of CGL policies. Those cases include Pekin Insurance Company v. Richard Marker Associates, Monticello Insurance Company v. Wilfrids, and most recently, Milwaukee Mutual Insurance Company v. J.P. Larson. In fact ñ Now, on page 10 of the reply brief, Westfield argues that National is not even potentially entitled to coverage because it was dismissed from the case prior to the filing of the underlying third amended complaint. Apparently, there was no allegation that Westfield had a duty to defend National or any of the additional insureds prior to the filing of that complaint. And yet the defendant's argument now hinges on National's liability for breach of the habitability. So, you know, help me with that. Sure, Your Honor. I dispute all of the statements in that second paragraph on page 10 of Westfield's reply brief. First of all, all of the additional insureds in National Decorating have always taken the position, prior to there being a filing of the third amended complaint, that they are entitled to coverage. As we stated in our statement of the case and statement of the facts, every single version of the underlying complaint alleged the same nexus of facts, that there is water infiltration at this condominium building as a result of work performed by National Decorating and that that water infiltration has caused damage to interior ceilings, floors, drywall, windowsills, etc. It is true that it was not until the third amended complaint that the underlying plaintiff added additional allegations of damage to the personal property. But prior to that, there's always been allegations of damage to portions of the building outside the scope of National Decorating's work. And we have always asserted that there is a basis for coverage because of that other property damage. It does not matter whether National is in the underlying litigation or not in the underlying litigation. Whether they've been dismissed as a direct defendant or not is really of no moment. And I do note that National Decorating currently is a third-party defendant in the underlying litigation, pursuant to claims asserted by both McHugh and my clients. Your Honors, the J.P. Larson court, turning back to the question of whether water infiltration is an occurrence, the J.P. Larson court could not have been more expressed in this regard. And I would direct Your Honors to paragraph 28 of the J.P. Larson decision, where the court stated very clearly that the underlying pleadings alleged that Larson's negligent workmanship caused an accident in the form of significant and continuing water leakage. J.P. Larson is controlling in this case, Your Honors. Westfield has failed to respond to this controlling precedent. And for this reason, we ask that you affirm the district court's decision. Okay. Thank you, Ms. Swine. So, Mr. Osborne, do you have anything further? Just a couple of points, Your Honor. The J.P. Larson case, which they rely on almost exclusively, Milwaukee Mutual v. J.P. Larson, decided in 2011. It's never been followed by a published decision in Illinois. It's never been followed by this court. The latest decision from the Illinois appellate court in Westfield, my client v. Wes Van Buren, specifically refused to follow it, said that's not good law in Illinois. This court's decision in Allied v. Metro North, which was decided just last month, involved basically an identical lineup, a window installer that didn't do his job right, let the water come in and damage the inside of the building, exactly the same as J.P. Larson. You cannot reconcile Metro North with J.P. Larson. So that's the greatest. Could National have bought insurance that would have covered? Would have covered it for failing to do its job? Yeah. Nothing other than a performance bond that I'm aware of. There is no general liability product on the market that covers that type of risk that I'm aware of. No. There are a couple of other points. The issue of the standing of the condominium association, that was also addressed in this court's decision in Metro North last month. The statute simply doesn't give the condo association standing to raise claims for damage to personal property that's owned by unit owners. That would be the unit owner's claim. So that can't be taken into account in determining the duty to defend. And, again, today is the first time that I've heard that they're making claims prior to the filing of the underlying third amended complaint, as Judge Rovner pointed out. They've never made a claim for that. They didn't file a counterclaim. You can look in their motions for summary judgment. They only discuss the third amended underlying complaint. The district court's decision only discusses the underlying third amended complaint. And the reason for that, even though there is damage to the rest of the building alleged from the inception, it wasn't until the underlying third amended complaint that these allegations of damage to furniture were inserted. So the basis for the district court's decision was essentially an afterthought. We spent most of our time in the district court arguing about this standing issue. And then the district court didn't even reach that. It came up with this completely new idea that was supported only by a prior district court decision, that somehow the additional insured endorsement, and to answer Judge Rovner's question, the additional insured endorsement says right there, it only modifies Part 2 of the policy, which is who is an insured. It doesn't modify Part 1, which gives us the scope of coverage. So it doesn't have any effect on the scope of coverage, except to the extent that it may narrow the coverage for the additional insured. But again, that's a red herring. We're not relying on that to defeat the duty to defend. It doesn't create performance bond coverage, and there is absolutely no authority to support that proposition. And this Court should reverse and enter judgment in favor of that claim. Okay. Well, thank you. Thank you, Your Honor. So we'll move on to our third case.